# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| United States of America, | ) | |
| --- | --- | --- |
| | ) | Criminal Action No.: 3:17-cr-00575-JMC-2 |
| v. | ) | **ORDER** |
| Vance Edward Volious, Jr., | ) | |
| Defendant. | ) | |

This matter is before the court to determine whether Defendant Vance Volious, Jr.'s ("Defendant") legal counsel represented him while possessing a conflict of interest with another client during the same time period. On February 11, 2019, the court conducted an evidentiary hearing, with the relevant, implicated parties to determine whether Defendant's attorney was proceeding under a conflict of interest. (ECF Nos. 349, 355.) For the reasons stated herein, the court **DENIES** Defendant's Motion for Miscellaneous Relief (ECF Nos. 347, 349) and declines to find a conflict of interest under the Sixth Amendment of the United States Constitution.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 2017, the Government filed its four-count Indictment against Defendant and two other co-defendants (collectively, "Defendants"). (ECF No. 22.) Count 1 of the Indictment charged Defendant with conspiracy to violate federal law and it contains allegations that Defendants "ordered, paid for, received, armed and attempted to reship a mail bomb for the

---

[1] The matter was brought to the court's attention by a letter from Vance Volious, Sr., the father of Defendant, filed on January 31, 2019. (ECF No. 347.) Defendant informed the court that the letter was filed with his consent. (ECF No. 349.) For purposes of the filings of Defendant and his father, the court will collectively construe them as a Motion for Miscellaneous Relief.

1

purpose of killing an intended victim." (*Id.* at 1.) Additionally, the Indictment alleges that Defendants conspired to distribute controlled substances. (*Id.* at 3–4.) Count 2 charged Defendant with the transport and receipt of explosives to kill an individual, in violation of 18 U.S.C. § 844(d) and 2. (*Id.* at 8.) Count 3 charged Defendants with mailing a nonmailable item with intent to kill, in violation of 18 U.S.C. § 1716(j)(2) and 2. (*Id.* at 9.) Count 4 charged Defendants with carrying explosives during the commission of a felony, in violation of 18 U.S.C. § 844(h) and 2. (*Id.*) On April 19, 2018, a jury convicted Defendant of all four counts. (ECF No. 328.) After Defendant's jury conviction, Vance Volious, Sr. ("Volious, Sr."), the father of Defendant, sent a letter to the court in January 2019, alleging that Defendant's counsel, Aimee Zmroczek ("Zmroczek"), represented Defendant while having a conflict of interest with another client. (ECF No. 347.) Defendant also sent a letter to the court, stating that he consented to his father's letter. (ECF No. 349.) Upon receipt of the letter, the court notified Zmroczek and counsel for the Government of the letter and its contents on January 31, 2019, and subsequently conducted an evidentiary hearing, to determine whether Zmroczek had a conflict of interest, on February 22, 2019. (ECF Nos. 345, 346, 355.)

The letter states that Zmroczek possessed a conflict of interest because she represented both Defendant and another defendant named Christopher Daugherty ("Daugherty"). (ECF No. 347.) Zmroczek began representing Defendant on June 23, 2017. In an unrelated criminal matter, Zmroczek represented Daugherty, specifically as local counsel for attorney Lenny Kagan who was appearing *pro hac vice*, from January 24, 2018, until June 13, 2018. In December 2018, Daugherty met Defendant in the Lexington County Detention Center and learned of his case. During that time, Daugherty and Defendant learned that an individual named Carl Rye, a defendant in another case, was involved in both of their respective cases. Carl Rye was directly involved in Daugherty's

2

criminal case as the Government's witness against him, however, Carl Rye also had information about Defendant's case. Regarding Defendant's case, Carl Rye was purportedly told by Tyrell Fears ("Fears"), one of Defendant's co-defendants, that Defendant "should have never been charged" because he "did not know what was going on." (ECF No. 347 at 1.) Daugherty learned of the information possessed by Carl Rye, which Carl Rye apparently obtained directly from Fears, and subsequently provided it to Defendant. Volious, Sr. indicates that Defendant "expressly directed his attorney to subpoena Carl Rye . . . ." (*Id.* at 2.) At the hearing, Zmroczek represented that she had attempted to speak with Carl Rye before Defendant's trial, but was precluded from doing so by Carl Rye's attorney. Although Carl Rye did not testify at Defendant's trial, Fears testified and was examined by the Government and cross-examined by Zmroczek. During the Government's questioning of Fears, he testified that he lied to Defendant's wife by telling her that "[Defendant] didn't know anything" and specifically admitted to the same statement when cross-examined by Zmroczek. During her cross-examination of Fears, Zmroczek asked him whether he said the "same words" to Carl Rye about Defendant's lack of knowledge of the crimes, and Fears responded that he "[didn't] recall that."

During an evidentiary hearing on February 11, 2019, the court heard from all parties implicated in this matter, including Daugherty, Defendant, the Government, Lenny Kagan, and Zmroczek. (ECF No. 355.) Defendant asserted that Fears lied during his trial and provided Carl Rye with exculpatory information to his case. Essentially, Defendant maintains that Carl Rye should have testified in his case and provided Fears' statements regarding his innocence to the jury. Defendant seems to believe that Zmroczek did not call Carl Rye because he was an adverse witness during her representation of Daugherty. Zmroczek informed the court that she had limited involvement with Daugherty's case because she only served as local counsel for Lenny Kagan,

only assisted with the filing of documents, and did not make legal decisions or strategies regarding the case. Additionally, she further advised that she never participated in discovery or represented Carl Rye. Daugherty testified that he saw Zmroczek two or three times while he was incarcerated and in the context of bond hearings. Daugherty further stated that nobody spoke to him about Defendant's case, and he did not learn about it until December 2018, well after Defendant's trial. Corroborating Daugherty, Lenny Kagan informed the court that he never told Daugherty anything about Defendant's case. Lenny Kagan further advised that Zmroczek only had the duty of making "quick appearances." The Government maintained that Fears testified directly to the jury and Fears' statements were mentioned during the trial. As it relates to Carl Rye, the Government stated that Daugherty's case was handled by the United States Attorney for the Northern District of Georgia and emphasized that Defendant's case is entirely independent of Daugherty's case.

## II. LEGAL STANDARD

Under the Sixth Amendment of the United States Constitution, criminal defendants have an unequivocal right to effective legal counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A necessary corollary to the right to effective assistance of counsel is the right to representation free from conflicts of interest." *United States v. Swartz*, 975 F.2d 1042, 1047 (4th Cir. 1992) (citations omitted). It is well-established that "[t]he attorney-client relationship begets a duty of loyalty-one that requires the attorney to remain free from conflicts of interest." *Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009) (citing *Strickland*, 466 U.S. at 688).

First, in order for an attorney to have a conflict of interest for purposes of the Sixth Amendment, he or she must have an *actual conflict* and not a *mere possibility* of a conflict. *See United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980)). Generally, an attorney will have an actual conflict when he or she *actively*

4

*represents conflicting interests*. *Id.* at 375–76. In other words, an actual conflict exists "[w]hen the attorney is actively engaged in legal representation which requires him to account to two masters . . . [and] it can be shown that he took action on behalf of one." *Id.* at 376. Overlapping representation is insufficient to create an actual conflict under the Sixth Amendment. *See United States v. Atkinson*, 565 F.2d 1283, 1284 (4th Cir. 1977).

Secondly, "the conflict [must] adversely affect[] counsel's performance in the defense of the defendant . . . ." *Tatum*, 943 F.2d at 376. "'Adverse effect cannot be presumed,' however, 'from the mere existence of a conflict of interest.'" *Stephens*, 570 F.3d at 208 (quoting *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002)). Instead, whether a conflict of interest adversely impacts an attorney's performance is shown "when an attorney takes action for one client that is necessarily adverse to another, or when an attorney fails to take action for one client for fear of injuring another." *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005). Additionally, in analyzing adversity, the United States Court of Appeals for the Fourth Circuit has held the following:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of Tatum, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) (citation omitted). A criminal defendant or civil petitioner must show an actual conflict and adversity by a preponderance of the evidence. *See id.* Only when both elements are present, prejudice to the criminal defendant is presumed, and he or she is entitled to a new trial. *Id.*

### III. DISCUSSION

In joint representation situations, an attorney must have an *actual conflict* between two

5

clients in order to commit a constitutional violation. *See Cuyler*, 446 U.S. at 348. Defendant seems to argue that Zmroczek's decision to not subpoena Carl Rye, who he believes would have been a favorable witness for his case, was because of her concurrent representation of Daugherty, for whom Carl Rye was an adverse witness, thereby creating a conflict of interest that was detrimental to his case. Zmroczek's representation of Daugherty clearly overlapped with her representation of Defendant because she has actively represented Defendant since June 23, 2017, and represented Daugherty from January 24, 2018, until June 13, 2018. However, overlapping representation does not necessarily show an *actual conflict*. *See Tatum*, 943 F.2d at 375; *Atkinson*, 565 F.2d at 1284. Here, Daugherty's criminal case does not involve or implicate Defendant's case. Put differently, they are two entirely different criminal matters that have no bearing upon one another. *See United States v. Taft*, 221 F. App'x 277, 279 (2007) (holding that an attorney did not possess an actual conflict when the overlapping representation "lasted for a brief period of time, during which neither individual was involved in the same proceeding or implicated in the same criminal conduct"). Moreover, while Zmroczek's joint representation may be unseemly and ill-advised, it does not rise to the level of an actual conflict because she merely served as local counsel for Daugherty and there is no indication that she handled the substantive aspects of his case, particularly the legal arguments and strategies. *See United States v. Mazzaferro*, 865 F.2d 450, 455 (1st Cir. 1989) (holding that an attorney, who served as local counsel for another attorney admitted *pro hac vice*, did not have an actual conflict because there was no evidence of the attorney having an "active involvement" in a co-defendant's defense or engaging in "interviews, strategy decisions, or plea negotiations"). Defendant has not rebutted Zmroczek's limited and seemingly inconsequential role in Daugherty's case. Indeed, there would be a wholly different issue before the court if Zmroczek was more involved in Daugherty's case. *See United States v. Nicholson*, 475

F.3d 241, 249–50 (2007) (holding that an attorney actively possessed a conflict of interest between two criminal defendants, despite the defendants being involved in different cases, because one defendant placed a "hit" on the other defendant, attempted to kill the other defendant's brother, and successfully murdered the other defendant's step-father). Thus, there is no indication that Zmroczek served "two masters" during her representation of both Daugherty and Defendant, and there is certainly no evidence suggesting that she failed to subpoena Carl Rye, at the expense of Defendant, to obtain a favorable outcome for Daugherty. *See Swartz*, 975 F.2d at 1048 (holding that an attorney possessed an actual conflict when a sentencing strategy "caused the interests of . . . two clients to diverge"); *Tatum*, 943 F.2d at 376–79 (holding that an attorney possessed an actual conflict when he represented two criminal defendants, and one of the defendants became "the key government witness" against the other). To be clear, the court takes no position on whether Zmroczek breached an applicable ethical standard and only determines that there was not an actual conflict that infringed upon Defendant's constitutional right to effective counsel under the Sixth Amendment. *See Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."). *But see Nicholson*, 475 F.3d at 250 ("It is clear to us that [this attorney's] actions were in contravention of the applicable ethical standards."); *Tatum*, 943 F.2d at 377 ("[W]e are struck by the gross insensitivity of Gavin to his several ethical responsibilities."). For these reasons, the court declines to find an actual conflict for purposes of the Sixth Amendment.

Even if an actual conflict existed, assuming *arguendo*, Defendant has not demonstrated that an actual conflict adversely affected his counsel's performance. In order to show an adverse effect, Defendant must show that his counsel took an action that was "necessarily adverse" to his interest. *Jones*, 401 F.3d at 267. Further, he must identify a (1) "plausible alternative defense

strategy," (2) show that the "alternative [defense] strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision," and (3) establish that failure to pursue the strategy or tactic was "linked" to his counsel's actual conflict. *Mickens*, 240 F.3d at 361. Due to her limited role, there is no evidence suggesting that Zmroczek declined to subpoena Carl Rye for the sole benefit of Daugherty. *Jones*, 401 F.3d at 267. Although Zmroczek did not subpoena Carl Rye to testify during Defendant's trial, the Government and Zmroczek provided the jury with the substantive statements that Fears purportedly told Carl Rye. Fears testified, while on the stand and likely impeaching himself, that his own words exonerating Defendant were lies. Zmroczek asked Fears about his alleged statements to Carl Rye to which he responded that he "[didn't] recall that." Because this evidence was provided to the jury, having Carl Rye testify firsthand was not an "objectively reasonable" strategy or "clearly suggested by the circumstances" at the time of Zmroczek's actions because Fears was able to directly testify about his own statements. *See generally Mickens*, 240 F.3d at 361–62 (rejecting an argument that an attorney's "failure to investigate or raise negative information" about a witness adversely affected an attorney's performance). In addition, Zmroczek represented that she attempted to contact Carl Rye, but was foreclosed from speaking with him by his attorney. Had Zmroczek subpoenaed Carl Rye, she would not have known how he would have testified on the stand. As such, Defendant has failed to satisfy the second *Mickens* factor by a preponderance of the evidence and has not shown that it was "objectively reasonable" for Zmroczek to have subpoenaed Carl Rye. Moreover, Defendant has not provided the court with any evidence that Zmroczek's failure to subpoena Carl Rye was "linked" to an actual conflict. *Mickens*, 240 F.3d at 361. Zmroczek, according to both her testimony and Lenny Kagan, did not make any legal decisions regarding Daugherty's case, thereby making it unlikely, if not impossible, that her

decision to not subpoena Carl Rye was "linked" to her representation of Daugherty. Therefore, Defendant has also failed to satisfy the third *Mickens* factor by a preponderance of the evidence. For these reasons, the court does not find that an actual conflict of interest adversely affected Zmroczek's performance or created a Sixth Amendment violation warranting a new trial.

## IV. CONLUSION

For the reasons stated herein and upon careful consideration of the testimony at the hearing, the court **DENIES** Defendant's Motion for Miscellaneous Relief (ECF Nos. 347, 349) and declines to find a conflict of interest under the Sixth Amendment of the United States Constitution.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 22, 2019
Columbia, South Carolina